May it please the Court, my name is Scott Bennett, and I am the Court-Appointed Amicus Counsel in this matter. Seated at the Council Table is the Counsel for the Petitioner, Mr. Frank Sprawls. I understand that Mr. Sprawls will not be presenting an argument this morning. The fundamental issue in this case is whether the Board of Immigration Appeals may overturn its precedent that has been implicitly ratified by Congress. From 1953 to 1957, the Board issued a series of decisions that interpreted the phrase exceptional and extremely unusual hardship. Then twice, first in 1962 and again in 1996, Congress substantially modified the immigration laws, yet each time it kept this phrase intact. Subsequent to that, in 2001, in the case of Monreal, the Board of Immigration Appeals rejected that series of decisions from 1953 to 1957. Now, that rejection was wrong as a matter of statutory interpretation, it implicates due process, and it caused prejudice to Mr. Orozco Segura. And for those reasons, I respectfully ask that this Court reverse and remand the decision of the Board. First, as to the issue of statutory interpretation, it is clear that under the REAL ID Act, this Court may review the Board's interpretation of the hardship standard. It need not review only constitutional issues. Now, the problem with Monreal and its rejection of the precedent, first, there is the presumption that Congress is aware of judicial and administrative interpretations of the statute, and when it enacts that same language without change, it is adopting those. Here we also have actual evidence. In the legislative history to IRIRA enacted in 1996, Congress acknowledged and rejected one line of BIA cases, those holding that the fact that an alien had become acclimated to the United States was enough to establish hardship. Now, that shows, first, that Congress is aware of the BIA interpretations, and second, the fact that it rejected one line of authority is implicit ratification of the other lines. Now, the other problem is that the Board adopted this interpretation because it believed that Congress intended to ratchet up the hardship standard. But Congress had done this by itself in three ways. First, it had increased the required period of continuous presence in the United States from seven to ten years. Second, it provided that only hardship to qualifying relatives may be considered, not to the applicants themselves. And third, where prior to 1996, many applicants simply had to show extreme hardship, after 1996, most have to show exceptional and extremely unusual hardship. Now, in light of these changes, it was not necessary for the Board to change its interpretation of the hardship standard in order to be consistent with congressional intent. But it did. Why wasn't that a reason? And why can't the Board do that? And we have a recent opinion as well that basically rejects this argument in a recent case called Ramirez-Perez v. Ashcroft. Your Honor, the issue in Ramirez-Perez was related, but it is distinct. The argument there was that the monorail's interpretation of the hardship standard was so strict that so few people would qualify, that violated due process. What this Court held was that, first, the interpretation was within the bounds of the statutory language, and, second, that it was consistent with legislative history to IRIRA, enacted in 1996. What this Court did not consider, what was never presented, and what this Court did not decide, was the effect of Congress's repeated maintenance of the same language each time it modified the argument. This interpretation of the hardship standard comports with the statutory language and congressional intent. It does not violate due process. What else is there left? And if it doesn't, your articulation of an issue seems that it's swamped by what we held in the Ramirez case that Judge Nelson wrote. It complies with the language, congressional intent. It doesn't violate due process. So where do we go? The language used by the Court in Ramirez-Perez was broader than necessary to resolve the issue that had been presented. So are you saying it's dicta? To the extent that it went beyond the issues that were actually before the Court in that case, yes. But the issue of the BIA's interpretation was squarely presented in that case, wasn't it? That's what it was all about. There was the broad and general argument that the BIA's interpretation was too strict. But the argument was not made about the effect of this repeated maintenance of this phrase, exceptional and extremely unusual hardship, despite two major changes to the immigration laws, first in 1962 and again in 1996. So we can ignore an earlier case based on arguments that were not made in that case? What's your best case for that proposition? Okay. Thank you. May I call you up for the delay? It is Sakamoto v. Duty Free Shoppers, Ltd., 764 F. 2nd, 1285. This Court collected cases that stood for the proposition that a prior decision is not binding on an issue not presented by the parties to that case and not decided by the courts. Well, I think that's truly an accurate representation of what we said. But this interprets the hardship standard reports with a statutory language and congressional intent. It does not violate due process. So you're bringing up the same issue but advancing a new argument in support of it, and that's much different than addressing an issue that the Court didn't address in the earlier case. You're coming at the same issue in a different way. The issue's been decided. If we have held it complies with the statute and the congressional intent, I don't see how you can get around that. I realize the position that you're in. I think it's the case, but you've got to tell us how to get rid of that case before you move to the next case. When you read the decision in Ramirez-Perez, I think it seems clear that the reference to congressional intent refers to the legislative history of IRIRA in 1996. In the legislative history, Congress had said that hardship must be substantially beyond that which would normally occur with removal, and that is the standard that the Court adopted in Montréal. But it's clear from the text of Ramirez-Perez that the Court was not deciding that The whole thing was limited to the argument that everyone presented, and it clearly referred only to the legislative history of IRIRA, and to the extent that it went beyond what was necessary, I would submit that it is the case. Okay, why don't you save the balance of your time for rebuttal. Good morning, Your Honors. May it please the Court, John Unshine on behalf of the United States Attorney General. Your Honors, this Court lacks jurisdiction, I should say, over the petitioner's claim for two reasons, bookended reasons. First of all, he has failed to raise these arguments. Or he failed to exhaust these arguments below with the Board. Well, in light of the Board's prior precedent, it would have been kind of futile to present these arguments to the Board. Of course, Your Honor, the Board has the authority to overturn its own precedent decisions, and the attempt to distinguish this particular argument on the square words that are being relied upon, the phrase being carried over through different acts, could have been raised to the Board. Do you think there was any reasonable basis for it to believe that the Board would have arrived at a different conclusion? No. I don't, Your Honor. But which, of course, takes us to Ramirez-Perez. This Court has already addressed the issue of whether or not this term or the application or use of the Board's discretion under Montreal is constitutional, whether it violates due process. And to that, I think the inquiry really stops right there. Whether or not the exact word was, quote-unquote, implicitly, or the prior Board precedent decisions were implicitly adopted in the statute, kind of flies in the face of actual, of the prior statute history in itself. The Board noted that in 1952 the word unconscionable was used when determining whether or not someone has met his exceptional, extremely unusual hardship standard. The Board said, we don't have to find that it's unconscionable. It's something less than that. These are the words used in the 1952 statute. Carried it over into something less than that. And, of course, the agency's interpretation of that term, which can be ambiguous, is a court of Chevron deference as well. And Ramirez-Perez, again, is directly on point. There is no reason for this Court to find that Montreal's interpretation of the hardship standard should be overturned. And, moreover, if Congress was really upset at the way that the Board was adjudicating these cases from 2001, like they made a point to clarify what they wanted happening in these cases back when the 96 Act was passed. There's been several years, a few immigration bills that have passed, and nothing has been done about it. So if there are no further questions from the Court, I would point the Court's attention, as it already has, to Petitioner, to Ramirez-Perez, and find that the Board's application in this case was proper and did not violate due process. And, therefore, the actual assessment of whether or not he violated or he met the discretionary standard talked about this Court's without jurisdiction to review. Thank you. Thank you, Your Honor. Your Honors, I will only emphasize that in Ramirez-Perez, the ultimate question before the Court was a question of due process. It was not focusing on the issue of statutory interpretation. Therefore, it would have been inclined to give the Board a little more leeway. Do you have no further questions? Thank you. Thank you. Thank you very much. Thank you. The matter will be submitted and will be adjourned.
judges: Trott, T.G. Nelson, Paez